**In the Matter of The SHERMAN–NOYES & PRAIRIE APARTMENTS REAL ESTATE INVESTMENT PARTNERSHIP, An Illinois Limited Partnership, Debtor.**

**In Matter of Paul D. WILCHER, Sr., Debtor.**

**In Matter of Carol Ann WILCHER, Debtor.**

**Bankruptcy Nos. 80–B–03928, 82–B–08657 and 82–B–13270.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 22, 1986.

John K. Kallman, Rudnick & Wolfe, Chicago, Ill., for Benjamin Bros., Inc.

Paul D. Wilcher, Sr., Carol Ann Wilcher, pro se.

Lawrence Cooper, Chicago, Ill., trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

### I.

Benjamin Brothers, Inc. ("BBI") has filed two motions in these bankruptcy cases: one motion seeks attorney's fees and costs pursuant to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11; the other seeks an order to strike and expunge certain of the debtors' pleadings and other papers filed with this court. The motion for attorney's fees and costs came on for hearing on February 5, 1986, and was taken under advisement. On the motion to strike and expunge which was filed on or about February 11, 1986, no hearing was requested.

The basis upon which BBI seeks costs and attorney fees is that Paul Wilcher ("Wilcher"), a licensed attorney in the State of Illinois, who is the debtor in case number 82 B 08657 and is also the sole general partner of the debtor in case number 80 B 03928, has appeared as counsel in those

cases and has engaged in a frivolous and malicious misuse of the legal system in the course of resisting BBI's claim in Wilcher's bankruptcy case. The basis of the motion to strike and expunge is that Wilcher's filed papers have contained scurrilous and scandalous assertions with respect to BBI.

A short review of the background of this matter is helpful.[1] On August 17, 1981, BBI obtained a judgment against Wilcher for $58,644.53 in an Illinois state court. The judgment was granted on a contract to purchase from BBI items used in the renovation of the Orrington Hotel, an Evanston property then owned by the Sherman-Noyes & Prairie Apartments Real Estate Investment Partnership ("Sherman-Noyes"), the debtor in case number 80 B 03928. On April 2, 1980, Sherman-Noyes filed a chapter 11 petition and thereafter operated for over a year as debtor in possession. Mounting losses led to the appointment of a trustee in August, 1981, and the liquidation of the estate's real properties in early 1982. Some irregularities attended the handling of the liquidation of one of the properties, although those irregularities were insufficient to cause reversal of the sale order. *See In Re Sherman-Noyes & Prairie Apartments Real Estate Investment Partnership*, no. 82 C 1665 (N.D.Ill. May 10, 1983).

In July of 1982 Wilcher filed his personal chapter 11 case, and BBI filed a claim in that case based on its judgment. Wilcher, in voluminous "pleadings" and "briefs" filed in both cases alleged that BBI was part of a massive criminal conspiracy involving, *inter alia,* the trustee in the Sherman-Noyes case, Judge Hertz, and many other judges, creditors and lawyers involved in the cases. Wilcher specifically alleged that BBI procured its original judgment through "fraud on the court," and that BBI played the role of "hatchetman" in the conspiracy by forcing Wilcher to file a personal chapter 11 case in order to prevent an imminent foreclosure on his home.

Wilcher made many similar charges against BBI and others which need not be detailed here.

Throughout the six years since the filing of the Sherman-Noyes case, Wilcher has failed to avail himself of any of the numerous opportunities afforded him to substantiate even the most preliminary of his allegations of a criminal conspiracy. Wilcher has in addition repeatedly disregarded the rules of this court as to page limits for filings. He has flooded the court with literally thousands of pages of "pleadings" and "briefs" containing innumerable "legal theories" and conclusory allegations concerning his charges of criminal conspiracy. He has prosecuted at least one utterly meritless appeal in which the rules governing appeals were violated. *See In Re Sherman-Noyes, supra.* Although given various opportunities to do so, Wilcher has failed to go forward with any meaningful discovery related to his charges. He has repeatedly shown up late for hearings and has sought repeated delays in the disposition of the cases. In the three and one-half years that Wilcher's personal case has been pending he has filed no plan of reorganization, and has apparently failed to file monthly or bimonthly reports for the last two years.

## II.

Although it is obvious that over the years BBI has suffered considerable legal expense as a result of Wilcher's tactics, BBI is now seeking only those attorney fees and costs needed to resist Wilcher's objection to its claim. The June 12, 1984, objection, like the rest of the documents filed by Wilcher, was grossly excessive in length and contained Wilcher's wholly unsubstantiated "conspiracy" theories. At a preliminary hearing on the objection held September 12, 1985, a trial of all issues was set for December 18, 1985, and Wilcher

---

1. For a more extensive review of the background of the Wilcher bankruptcy cases see this court's memorandum decision in *In Re Wilcher,* 56 B.R. 428 (Bankr.N.D.Ill.1985).

was specifically granted permission to depose BBI's principals.[2]

Pursuant to the court's pretrial order, BBI prepared, served, and timely filed a list of witnesses, a list of exhibits, copies of twenty-three exhibits, and proposed findings and conclusions. No lists of witnesses or exhibits and no proposed findings or conclusions were ever filed by Wilcher. At the December 18th hearing it was apparent that Wilcher had failed to comply in all respects with the court's pretrial order. Wilcher refused to adduce any testimony or tender any exhibits in support of his objection. No evidence of any sort was offered on Wilcher's behalf.

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Bankruptcy Rule 9011(a) further provides:

(a) *Signature.* Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state his address and telephone number. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law

or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the costs of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

■ It is apparent that Wilcher's conduct in this case has violated both of the above provisions. When an attorney recklessly creates needless costs an opposing party is entitled to relief under either the statute or the rule. *See In Re TCI Ltd.,* 769 F.2d 441, 446 (7th Cir.1985). This is true even in the absence of malice or bad faith if the claim made is not objectively colorable. *See id.* at 445. Section 1927 is intended to insure that an attorney bear the costs of his own lack of care.

In this case Wilcher's conduct has been at least reckless and unreasonable. The claim upon which Wilcher's objection was based must be considered frivolous in light of its proponent's complete failure to even seek support for it. Both the tone and character of the papers he has filed support a finding of vexatiousness. BBI has been put through a needless ordeal and incurred needless legal costs in pursuing its claim. Wilcher at no time has presented a basis upon which his objection to BBI's claim could be deemed colorable.

---

2. Wilcher also sought specific permission to depose other parties. Although the court informed Wilcher that such permission was not required under the Bankruptcy Rules and that Wilcher was free to depose whomever he chose, subject only to any objection that might be forthcoming, Wilcher apparently failed to commence any other meaningful discovery in order to find evidence in support of his charges.

There is no foundation, other than personal sympathy for an apparently sincere, troubled, bumbling individual, on which I can find even a scintilla of "good faith" in Wilcher's filing his objection to BBI's claim. But compassion for individuals who suffer cannot be a justification for permitting a lawyer to engage in frivolous, unreasonable, vexatious tactics which subvert the procedures of the court and needlessly increase the costs of opposing parties.

■ A cursory review of BBI's fee request shows the amount sought to be presumptively reasonable, in light of the large amounts of time and effort that Wilcher's conduct of the case has required. Wilcher has filed no objection to the fee request which would put its reasonableness in question. BBI should recover $12,863.76 in attorney's fees and disbursements.

## III.

■ Bankruptcy Rule 9018 provides:

On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

B.R. 9018 provides the procedure for invoking the court's power under 11 U.S.C. § 107.[3] A motion under Rule 9018 is addressed to the sound discretion of the court. *Hope on Behalf of Clark v. Pearson,* 38 B.R. 423 (Bankr.M.D.Ga.1984). Motions to seal pleadings and other documents are disfavored as a general rule, *id.,* and should be entered only when actually necessary to protect a party from harm. *See* 11 U.S.C. § 107(b)(2); B.R. 9018.

■ BBI's motion to strike and expunge must be denied because the material in question to a considerable degree supports the decision of the court to award attorney's fees herein. For similar reasons, Judge Moran refused a motion to strike in his May 10, 1983, memorandum and order. *See In Re Sherman-Noyes, supra* at 3.[4] Furthermore, the allegations made by Wilcher are so vague and so grossly voluminous as to tax the credulity of anyone examining the files. No reasonable person would be caused to alter any opinion of BBI on the basis of the statements made in the context in which they appear. I am not convinced that any real need for protection exists in this case.

**3.** 11 U.S.C. § 107 provides:
(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

**4.** Judge Moran did enter a protective order in that case prohibiting disclosure of the contents of the debtor's volumes to any persons not presently party to the pending chapter 11 proceedings. It is not clear if that order was directed only to files in Judge Moran's court or was intended to reach all files held in the bankruptcy cases.