**JTR ENTERPRISES, LLC, Plaintiff,**

v.

**AN UNKNOWN QUANTITY OF COLOMBIAN EMERALDS, AMETHYSTS AND QUARTZ CRYSTALS located within 3,000 yards of a point located at coordinates 24°57.79″ North Latitude and 81°55.54″ West Longitude, In Rem, Defendant,**

v.

**Motivation, Inc., Claimant.**

**No. 11–10074–CIV.**

United States District Court, S.D. Florida.

Dec. 10, 2013.

■■■■■■■■■■■

John Marcus Siracusa, Joseph William Janssen, III, Melissa Devlin Lazarchick, Janssen & Siracusa, P.A., West Palm Beach, FL, for Plaintiff.

### OMNIBUS ORDER ON DISCOVERY MOTIONS [1]

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court on various discovery motions that are ripe for disposition. The Court has reviewed the motions, the responses, the parties' various other submissions, and the relevant authority. Based upon a thorough review of the record, the Court's rulings follow.

**A. Motivation, Inc.'s Motion to Compel Production of Documents Sought by Subpoena and Testimony Despite Claims of Attorney–Client and Work–Product Privileges Due to the Crime Fraud Exception to the Privileges [D.E. 259]**

On August 8, 2013, this Court entered an Order [D.E. 261] denying Motivation, Inc.'s ("Motivation") Motion to Compel Production of Documents Sought by Subpoena and Testimony Despite Claims of Attorney–Client and Work–Product Privileges Due to the Crime Fraud Exception to the Privileges [D.E. 259] on the grounds that the discovery cutoff had passed and the motion was untimely. Then, on August 19, 2013, the Court entered an Order which, among other things, reopened discovery in this case. [D.E. 268]. On October 24, 2013, this Court entered an Order advising the parties that it would revisit Motivation's motion to compel and resolve the matter on its merits. [D.E. 293]. Following that Order, JTR Enterprises, LLC ("JTR") and its former and current counsel filed responses and affidavits in opposition to the motion. [D.E. 297, 298, 299, 302].

Motivation's motion seeks to compel production of documents from several nonparties. First, the motion seeks to compel documents from Young Conaway Stargatt &

Taylor, LLP ("YCST"), a Delaware-based law firm, based on a subpoena for production that was dated February 22, 2013 [D.E. 259–4], and Bruce Silverstein ("Silverstein"), a partner at YCST and a member of and general counsel to JTR. [D.E. 259 at p. 2]. The subpoena was issued by the United States District Court for the District of Delaware. Upon receipt, YCST sent a letter to Motivation's counsel stating various objections to the subpoena and indicating that YCST would not be producing documents by the date requested in the subpoena. Although YCST's letter refers to two subpoenas (one issued to YCST and another issued to Silverstein), only the subpoena issued to YCST is attached to Motivation's motion.

■ As a threshold issue, this Court lacks jurisdiction to enforce the subpoenas issued to YCST and Silverstein out of the District Court in Delaware. Federal Rule of Civil Procedure 45(d)(2)(B) states:

> A person commanded to produce documents or tangible things ... may serve on the party or attorney designated in the subpoena a written objection.... If an objection is made, the following rules apply:
>
> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

Fed.R.Civ.P. 45(d)(2)(B). Moreover, Federal Rule of Civil Procedure 37(a)(2) states that "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed.R.Civ.P. 37(a)(2).

■ Together, Rules 45(d)(2)(B) and 37(a)(2) direct that motions to compel compliance with subpoenas for production from non-parties must be filed with the issuing court. In other words, the court issuing a subpoena is responsible for its enforcement and has exclusive jurisdiction to rule on a subpoena issued in that court's name. *See Matter of Certain Complaints Under Inves-*

---

1. On July 16, 2013, the Honorable K. Michael Moore referred these motions to the undersigned Magistrate Judge for disposition. [D.E. 251].

*tigation,* 783 F.2d 1488, 1495 (11th Cir.1986) ("The subpoena is enforceable in the court which issued it. . . ."); *Chick-fil-A v. Exxon-Mobil,* No. 08–61422–CIV, 2009 WL 2242392, at *1 (S.D.Fla. July 24, 2009) (the court denied a motion to quash a subpoena issued out of the Northern District of Georgia because it "[did] not have the authority to decide the instant motion"); *Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt., Inc.,* No. 07–21489–CIV, 2008 WL 4372884, at *1 (S.D.Fla. Sept. 24, 2008) (denying a motion to compel compliance with a subpoena issued by the United States District Court for the Eastern District of New York because "this Court does not have jurisdiction to enforce the subpoena issued by the [other district court]" and noting that "[t]he Advisory Committee note to the 1991 amendment to Fed.R.Civ.P. 45(a)(2) states that the court in whose name the subpoena issued is responsible for its enforcement"); *Rivertree Landing, LLC v. Murphy,* No. 6:07–mc–104–GAP–DAB, 2007 WL 3333357, at *1 (M.D.Fla. Nov. 9, 2007) ("[T]his Court has no jurisdiction over any subpoena not issued by this Court. . . ."). Thus, Motivation's motion to compel as to the subpoenas issued to YCST and Silverstein is **DENIED without prejudice** with leave to renew in the proper forum.

Motivation's motion also seeks to compel JTR's former counsel, David Paul Horan ("Horan"), who served as counsel for JTR from approximately March 15, 2011 through October 10, 2012 [D.E. 141], to produce documents in response to Motivation's subpoena for production of documents served on Horan. [D.E. 259–1]. The subpoena is dated February 6, 2013 and was issued by the United States District Court for the Southern District of Florida. Thus, unlike the subpoenas issued to YCST and Silverstein, this Court has jurisdiction over the subpoena issued to Horan.

In response to the subpoena, Horan provided two privilege logs, stating that certain documents are "being withheld as privileged or subject to protection as work product" and "without a waiver by our former client [JTR] or an order of court these documents will not produced." [D.E. 259–2, 259–3]. The first privilege logs lists 95 emails from October 18, 2011 to December 28, 2012. [D.E. 259–2]. The second privilege log lists 20 emails from December 19, 2011 to January 25, 2013. [D.E. 259–3].[2]

Motivation alleges that the documents sought from Horan are relevant to the upcoming hearing on its Motion for Sanctions [D.E. 123]. Specifically, Motivation argues that the attorney-client and work-product privileges do not shield the production of documents "because preceding and throughout the pendency of this case, JTR and its founders have been and are engaged in a criminal conspiracy to defraud investors and consumers. In fact, JTR's filing of this admiralty case, verified by Jay Miscovich [ ("Miscovich") ], was part of its criminal scheme to fabricate a treasure find and is a fraud upon the court." [D.E. 259 at p. 2]. Therefore, Motivation contends, the crime-fraud exception vitiates any claimed privilege and required production of the withheld documents. [*Id.*].

"The attorney-client privilege does not protect communications made in furtherance of a crime or fraud." *In re Grand Jury Investigation (Schroeder),* 842 F.2d 1223, 1226 (11th Cir.1987). A "client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *In re Campbell,* 248 B.R. 435, 439 (Bankr.M.D.Fla.2000) (quoting *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933)). To determine whether the crime-fraud exception applies, we employ a two-part test laid out in *In re Grand Jury Investigation:*

> First, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal

---

**2.** The second privilege log indicates that it was served in June 2013. [D.E. 259–3 at p. 4]. There is no indication of the date of service included on the first privilege log.

or fraudulent activity or was closely related to it.

*Gutter v. E.I. Dupont De Nemours,* 124 F.Supp.2d 1291, 1305 (S.D.Fla.2000). Once the movant has made these showings, the burden of persuasion shifts to the party invoking the privilege to provide a reasonable explanation of the conduct or communication to rebut the *prima facie* showing. *Id.* at 1307. "If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains. If the court does not find the evidence is sufficient to rebut the *prima facie* case, then the *prima facie* case still exists and the privilege is lost. In order to carry its burden of persuasion, the party seeking to invoke the privilege has to show by a preponderance of the evidence that the *prima facie* showing that the crime/fraud exception applies should not be accepted." *Id.*

 Consistent with these principles, the Court can engage in *in camera* review to determine the applicability of the crime-fraud exception. *United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). Before doing so, " 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* (citations omitted). "Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.*

 Based on our review of Motivation's motion and the submissions and affidavits that followed, we find that a *prima facie* case for application of the crime-fraud exception

has been made. In short, the evidence presented in this record shows the services of Horan may have been obtained by JTR to enable it and others, including Miscovich, to commit or further ongoing criminal or fraudulent conduct. However, we also find that Horan has provided a reasonable explanation of the conduct or communication that may rebut the *prima facie* showing. Accordingly, the Court will conduct an *in camera* review of the documents listed on Horan's privilege logs to determine their relevance and to assess whether they were sufficiently related to the alleged criminal or fraudulent conduct such that the privilege was waived as to those documents. Horan shall, within 7 days of the entry of this Order, submit to the Court for further review copies of the unredacted versions of the documents listed on his privilege logs [D.E. 259–2, 259–3].

### B. JTR's Motion to Compel [D.E. 301]

JTR's Motion to Compel [D.E. 301] seeks to compel Motivation to produce documents responsive to requests numbers four and five from JTR's second request for production ("RFP"). We address the RFPs in turn below.

#### 1. Request to Produce Number Four

JTR's RFP number four seeks "[a]ll communications between John Holloway and Hugh Morgan, Joe Sweeney, Buster White, Gene Lewis, Kim Fisher, Sean Fisher and/or any other representatives of MOTIVATION, INC., related to JTR Enterprises, LLC, members of JTR Enterprises, LLC, Emerald Reef, LLC, the above referenced admiralty claim and/or the subject *res.*" [D.E. 301–1 at pp. 5–6]. Motivation first objects to this RFP on the grounds that the documents sought are subject to the attorney-client privilege and work-product doctrine. [D.E. 301–2 at p. 2]. In this regard, Motivation states that "Mr. Holloway represents parties who are not parties to this action" and "Holloway's clients have common interest with Motivation in the outcome of this litigation and Holloway has certain shared facts and legal theories in consonance with common interest in this litigation." [*Id.*]. Thus, Motivation argues that the "common interest" or "joint

defense" doctrine applies and should preclude it from producing the documents sought.

To properly analyze Motivation's claim that the "common interest" or "joint defense" doctrine applies, we must identify the roles of the individuals named in the RFP. John Holloway, Esq. is an attorney who represents Dean Barr and Neil Ash, two individuals who previously invested money with Miscovich. Hugh Morgan, Buster White, and Gene Lewis are attorneys for Motivation. Kim Fisher and Sean Fisher are the president and vice-president, respectively, of Motivation. The record demonstrates that Barr and Ash are not parties to this litigation.

Motivation states that "[w]hen Barr and Ash became convinced that Miscovich had defrauded them as this action progressed, they realized that it was in their interest to join with Motivation's efforts to expose that the entire basis for their investment was a fraud.... Ash and Barr directed their attorney, John Holloway, to cooperate with the efforts of Motivation's counsel." [D.E. 309 at p. 2]. "In other words, all of these parties have a common legal interest in uncovering the fraud." [*Id.* at p. 3].

■ "[T]he common-interest privilege applies when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities." *In re Ginn–LA St. Lucie Ltd., LLLP,* 439 B.R. 801, 805 n. 4 (Bankr.S.D.Fla.2010); *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 893 (S.D.N.Y.1999) ("The 'common interest' doctrine typically applies where multiple persons are represented by the same party—'joint representation—and accordingly both clients are working together with a single attorney toward a common goal.'") (citing *Int'l Ins. Co. v. Newmont Mining Corp.,* 800 F.Supp. 1195, 1196 (S.D.N.Y.1992)). Moreover, the doctrine "establishes an exception to the general rule that the attorney-client privilege is waived upon the voluntary disclosure of the privileged information to a third party. The joint defense doctrine allows parties who share unified interests to exchange privileged information to adequately prepare their cases without losing the protection afforded by the privilege." *Fries v. Teaford*

*Co., Inc.,* No. 5:12–CV–37–RS–CJK, 2012 WL 3966382, at *2–3 (N.D.Fla. Sept. 11, 2012) (citing *In re Indiantown Realty Partners,* 270 B.R. 532, 539 (Bankr.S.D.Fla. 2001)). However, sharing a desire to succeed in an action is not enough to create a common interest where there was no evidence of an agreement, the third-party was never party to the action, and the third-party never exercised control over or contributed to legal expenses. *Shamis,* 34 F.Supp.2d at 893.

■ Motivation's response makes clear that Barr, Ash, and others share a similar interest in uncovering the purported fraud. [D.E. 309 at p. 3]. However, a mere shared desire of non-parties to uncover a purported fraud is not a legally sufficient basis on which we can sustain Motivation's objection to the RFP. Thus, on this record, the "common interest" or "joint defense" doctrine does not apply and Motivation's objection is overruled. Motivation's other objection to RFP number four—that the RFP is overly broad—is without merit. JTR's Motion to Compel [D.E. 301] is **GRANTED** as to RFP number four. Motivation shall produce to JTR all responsive documents within 10 days of the entry of this Order.

### 2. *Request to Produce Number Five*

JTR's RFP number five requests "[a]ll communications between any federal agents and Hugh Morgan, Joe Sweeney, Buster White, Gene Lewis, Kim Fisher, Sean Fisher and/or any other representatives of MOTIVATION, INC., related to JTR Enterprises, LLC, members of JTR Enterprises, LLC, Emerald Reef, LLC, the above referenced admiralty claim and/or the subject *res.*" [D.E. 301–1 at p. 6]. Motivation objects to this RFP on the ground that production of such documents and communications, "if any exist, would involve an on-going criminal investigation and are not subject to disclosure at this time." [D.E. 301–2 at p. 2]. JTR seeks to have Motivation's objection overruled, arguing that "Motivation has no legal objection or privilege, and ... has not provided any statute, law or case that states it is against the law for Motivation to produce

communications it has had with federal agents." [D.E. 316 at pp. 3–4].

■ "Under federal common law, there is a qualified privilege which protects disclosure of information contained in criminal investigations." *White v. City of Fort Lauderdale,* No. 08–60771–CIV, 2009 WL 1298353, at *2 (S.D.Fla. May 8, 2009); *see In re Matter of Eisenberg,* 654 F.2d 1107, 1110 n. 5 (5th Cir.1981) (Unit B) (recognizing the federal privilege for production of documents relating to ongoing criminal investigations);[3] *Swanner v. United States,* 406 F.2d 716, 719 (5th Cir.1969); *see also Sirmans v. City of South Miami,* 86 F.R.D. 492 (S.D.Fla.1980) (setting forth a ten-factor test for determining the application of the qualified privilege for police investigative files).

■ This privilege, known as the law enforcement privilege, is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of … investigatory files." *In re Polypropylene Carpet Antitrust Litig.,* 181 F.R.D. 680, 686 (N.D.Ga.1998); (citing *United States v. Winner,* 641 F.2d 825, 831 (10th Cir.1981)) (citations and quotations omitted). The purpose of the privilege " 'is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation.' " *In re Polypropylene Carpet Antitrust Litig.,* 181 F.R.D. at 687 (citing *In re Department of Investigation,* 856 F.2d 481, 484 (2d Cir.1988)). Thus, the privilege may be raised by a department having control over the documents at issue. *Id.* Typically, in determining whether the privilege should apply, a court must balance the government's interest in confidentiality against the litigant's need for information. *See Hickey v. Columbus Consol. Gov't,* No. 4:07–CV–096 (CDL), 2008 WL 450561, at *4 (M.D.Ga. Feb. 15, 2008) (citing *Coughlin v. Lee,* 946 F.2d 1152, 1160 (5th Cir.1991)).

■ Here, JTR seeks documents from Motivation. JTR did not request any governmental or law enforcement agency to produce their investigatory files or communications. Nor did any governmental or law enforcement agency assert the law enforcement privilege in relation to the documents sought by JTR from Motivation. The record is clear that no governmental or law enforcement agency filed a response or objection to the RFP, nor did any governmental or law enforcement agency join in Motivation's response. Moreover, Motivation has not provided an affidavit or any supporting documentation to confirm that there is, in fact, an ongoing criminal investigation.

In summary, we find that the privilege does not apply to the RFP at issue and Motivation's objections on this basis are overruled. *See Sterling Merchandising, Inc. v. Nestle, S.A.,* 470 F.Supp.2d 77, 83–84 (D.P.R.2006) (stating that the law enforcement investigatory privilege may be invoked only by government law enforcement authorities and the head of department in control of requested information, must be based on actual personal consideration of the person raising the claim, and must provide an explanation of why the information falls within the scope of the privilege); *In re Polypropylene Carpet Antitrust Litig.,* 181 F.R.D. at 686–87 (same). JTR's Motion to Compel [D.E. 301] is **GRANTED** as to RFP number five. Motivation shall produce to JTR all responsive documents within 10 days of the entry of this Order.

### C. Motivation's Motion for Order Unsealing D.E. 13 and 14 and an Order Requesting the Delaware Chancery Court to Unseal Files in Connection With This Matter [D.E. 295]

Motivation's motion [D.E. 295] seeks two forms of relief, which we will address in turn. No responses in opposition to the motion were filed.

First, Motivation seeks an Order unsealing D.E. 13 and 14. In support, Motivation states that "Neil Ash, Dean Barr and Bruce

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Mactus, and their related entities, who, through their counsel authorized the sealing of these records, consent to the unsealing of ... D.E. 13 and 14 in the interest of justice." [D.E. 295 at ¶ 11]. Based on Motivation's representations, and in the absence of any timely filed opposition, the portion of Motivation's motion seeking to unseal D.E. 13 and 14 in this case is **GRANTED.**

Second, Motion's motion asks this Court "to issue a request to the Court of Chancery for the State of Delaware in *AZALP, LLC et al v. Jay Miscovich, et al.,* docketed as Case No 6138–VLC, to release from seal the documents placed under seal in the referenced Delaware action and to order Jay Miscovich's counsel, Bruce Silverstein and Young Conaway Stargatt & Taylor, to turnover all such documents to Motivation within 5 days of this court's order." [D.E. 295 at p. 1]. Motivation states that prior to filing this case, Miscovich was sued in a Delaware Chancery Court by certain investors. [*Id.* at p. 2]. That suit focused on issues of corporate governance relating to a limited liability company formed to manage what certain investors thought was a legitimate find of emeralds in the Gulf of Mexico. [*Id.*]. That suit was settled in March 2011 and approved by the Delaware Chancery Court in August 2011. [*Id.*]. All of the pleadings and motions in that suit were filed under seal. [*Id.*]. In short, Motivation asks this Court to issue a request to the Delaware Chancery Court "in order to obtain statements made by or on behalf of Miscovich about the emerald find that are contained in pleadings and in Miscovich's affidavit(s) filed in the Delaware proceedings." [*Id.*].

Motivation's motion states that its counsel consulted with JTR's counsel regarding the relief sought, and JTR's counsel responded that, "as JTR Enterprises was not a party to the Delaware litigation, JTR takes no position on the motion." [D.E. 295 at p. 6]. However, Motivation has not provided any legal authority supporting its request that we issue a request to the Delaware Chancery Court to unseal all records in a case pending before it. The closest authority relied upon in the motion is *Wilson v. Am. Motors Corp.,* 759 F.2d 1568 (11th Cir.1985), for the propo-

sition that a "third party intervened after [a] judicially approved settlement in order to challenge sealing." [D.E. 295 at p. 6]. In *Wilson,* the court recognized the "somewhat unusual circumstances" involved in that the "case actually went to trial" and, prior to the settlement agreement, "the transcript of that trial was part of the public record." *Wilson,* 759 F.2d at 1571. Moreover, "[t]he trial was an open public proceeding" and, "most significantly, the trial got as far as at least partial consideration by the jury." *Id.* The court noted that "[t]he parties presented no legally sufficient reason for the closure of the record." *Id.*

 Here, Motivation states that all pleadings and motions in the Delaware suit were filed under seal and that the suit was settled, presumably before any trial began. [D.E. 295 at p. 2]. Thus, *Wilson* is inapposite to the facts of this case and does not provide any support for the relief sought in Motivation's motion. Accordingly, the portion of Motivation's motion asking this Court to issue a request to the Delaware Chancery Court to unseal records in a suit before it is **DENIED.**

### D. JTR's Motion to Compel Production of the Sworn Statement of Lisa Martorano [D.E. 312]

JTR motion [D.E. 312] seeks to compel production of the entire sworn statement of Lisa Martorano, a portion of which was attached as "Exhibit C" [D.E. 310–3] to one of Motivation's prior filings [D.E. 310]. The motion also seeks to compel production of "Exhibit 1" that was referred to in, but not attached to, the sworn statement. Although Motivation did not file a formal response to JTR's motion, the motion indicates that "[c]ounsel for Motivation advised that the sworn statement is investigative work-product" that "would not be produced absent a court order." [D.E. 312 at p. 2]. JTR argues, however, that "Motivation waived any work-product privilege it may have had when it decided to disclose portions of the statement to the public." [*Id.*]. We agree with JTR.

 "A party can't selectively cho[o]se which portions of a document to release to the public and which portions it wishes to

assert a privilege." *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D.Kan.1996); *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 266 F.Supp.2d 1144, 1148 (C.D.Cal.2003) ("[W]ork product immunity 'may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, [these protections] may be implicitly waived.' ") (quoting *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir.2001)); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512 (S.D.Cal. 2003) ("[W]aiver of the protections afforded by the work product doctrine is a tactical litigation decision. Attorney and client both know the material in question was prepared in anticipation of litigation; the subsequent decision on whether or not to 'show your hand' is quintessential litigation strategy. Like attorney-client privilege, there is no reason to transform the work product doctrine into another 'brush on the attorney's palette,' used as a sword rather than a shield.") (quoting *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306–07 (6th Cir.2002)).

Federal Rule of Evidence 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) ("[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402.").

 We find that Motivation cannot reasonably expect to preserve confidentiality of its purported work-product—the sworn statement of Lisa Martorano—after voluntarily disclosing certain substantive components of it. *See Kintera*, 219 F.R.D. at 513. Moreover, the doctrine of completeness requires full disclosure should the sworn state-

ment be introduced at the upcoming hearing. Finally, we note that Motivation failed to file a response in opposition to JTR's motion to compel or otherwise present any legal authority in support of its position. In light of the foregoing, JTR's motion to compel [D.E. 312] is **GRANTED**. Motivation shall produce to JTR the entire sworn statement of Lisa Martorano, including Exhibit 1 referenced therein, within 10 days of the entry of this Order.

### E. JTR's Motion to Compel and For Sanctions [D.E. 313]

JTR's motion seeks to compel Motivation's corporate representative to produce documents responsive to JTR's Second Re–Notice of Taking Deposition *Duces Tecum* (the "Notice") and for sanctions for Motivation's failure to timely produce those documents. [D.E. 313]. On October 25, 2013, JTR served its Notice, which required Motivation's corporate representative to bring to the November 4, 2013 deposition its entire file relating to Motivation's motion for sanctions [D.E. 123], JTR's response [D.E. 142], and Motivation's reply [D.E. 154]. Motivation's corporate representative (Kim Fisher) failed to bring any responsive documents to the deposition. Motivation did not file a response to JTR's motion. Based on this record, the portion of JTR's motion seeking to compel the documents specified in the Notice is **GRANTED**. Motivation shall produce to JTR all documents responsive to the Notice within 10 days of the entry of this Order.

 In addition, JTR seeks to continue the deposition of Motivation's corporate representative after the aforementioned documents are produced. Notwithstanding our Order dated November 21, 2013 [D.E. 317] denying Motivation's Motion to Enlarge the Number of Depositions Allowed [D.E. 292], we find good cause exists under these circumstances to permit the continued deposition of Motivation's corporate representative. Indeed, JTR argues that the failure of Motivation's corporate representative to produce at the deposition documents responsive to the Notice left JTR unable to complete the deposition. [D.E. 313 at p. 4]. Upon review

of the excerpts of the deposition of Kim Fisher attached to JTR's motion [D.E. 313–2], we note that the deposition lasted from 10:14 a.m. to 4:19 p.m., for a total of six hours and five minutes. Thus, should JTR wish to continue the deposition for another 55 minutes—for a total duration of seven hours as permitted by Fed.R.Civ.P. 30(d)(1)—the parties shall work together to set the continued deposition, which may be taken in person or by video-conference, for a mutually convenient date and time. All costs of the continued deposition shall be borne by Motivation. The portion of JTR's motion to compel seeking to compel a continued deposition of Motivation's corporate representative is **GRANTED** as set forth herein.

Finally, the sanction of awarding JTR its attorneys fees associated with this motion is not warranted at this time. Motivation's failure to comply with this Order, however, may require appropriate Rule 37 sanctions. Thus, the portion of JTR's motion seeking its attorneys fees incurred in bringing this motion is **DENIED.**

### F. Motivation's Motion to Compel Plaintiff to Fully Respond to Motivation's Interrogatories, Request for Admissions, and Request for Production [D.E. 320, 321, 322]

Motivation's motions to compel [D.E. 320, 321, 322] were filed on December 2, 2013. The Court's Order dated August 19, 2013 states that "[a]ny and all pre-hearing motions must be filed no later than sixty (60) days prior to the hearing date" and "[a]ll discovery shall be completed seventy (70) days prior to the date of the hearing." [D.E. 268]. That Order also states that the hearing date is January 13, 2014. Thus, the discovery cutoff was November 4, 2013 and the deadline to file motions was November 14, 2013. Accordingly, Motivations's motions to compel are **DENIED** as untimely.